THE STATE v. HARVEY, *Appellant*.

Divison Two, December 3, 1895.

1. **Criminal Law**: PRACTICE: EVIDENCE: HANDWRITING. One who has seen a defendant in a criminal trial write, and has received letters from him and is acquainted with his handwriting, may testify as to whether a letter offered in evidence is in defendant's handwriting.

2. ——: ——: ——: ——: OPINION. A witness who testifies that he is acquainted with the handwriting of the defendant in a cause may give his opinion as to whether a letter offered in evidence is in the latter's handwriting.

State v. Harvey.

3. ——: ——: ——: ——. Where a letter introduced in evidence was shown to be in the handwriting of the defendant and was received through the mail by the person to whom it was written, it was not error to admit the envelope, although the address on it was not shown to be in the defendant's handwriting.

4. ——: ——: ARSON: ALIBI: EVIDENCE. ·Where, on a trial for arson, the defense was an alibi, the defendant simply denying the burning and stating that he was elsewhere at the time, it was proper to permit him to be cross-examined as to where he was at the time of the fire.

5. ——: ——: ALIBI: BURDEN OF PROOF: INSTRUCTION. In criminal trials, where the defense is an alibi, the burden is on the state to show, beyond a reasonable doubt, the presence of the defendant at the place of the crime, at the time of its commission, and a failure to so instruct will constitute reversible error; the burden of establishing an alibi can not be cast upon the defendant.

6. Arson in the Fourth Degree: CHATTELS: "HAYSTACKS." Stacks of hay are "chattels" within the meaning of Revised Statutes, 1889, section 3518, providing that every person who shall willfully set fire to or burn any goods or other chattels of another, not the subject of arson in the third degree, or any stack of grain, etc., not the subject of arson in the first degree, shall be guilty of arson in the fourth degree.

*Appeal from Crawford Circuit Court.*—HON. C. C. BLAND, Judge.

REVERSED AND REMANDED.

*W. P. Elmer* and *J. T. Woodruff* for appellant.

(1) *First.* The court committed manifest error in admitting as evidence the letter marked "Exhibit A." The only evidence of its authorship is what McNeil says, and his knowledge of defendant's handwriting, as he himself admits, comes from a comparison of this letter with letters which the defendant says he never wrote, and no one else says* he did write; besides, the letters from which McNeil acquired his pretended knowledge had no connection whatever with the case. *State v. Clinton*, 67 Mo. 380; *State v. Owen*, 73 Mo.

440; *Springer v. Hall*, 83 Mo. 693. *Second.* McNeil was not an expert, had no qualifications as such and ought not to have been permitted to testify as one. Rogers on Expert Testimony, page 292. *Third.* The court erred in admitting as evidence the envelope as set forth in the bill of exceptions, because no one, not even McNeil, identified it as defendant's. *State v. Minton*, 116 Mo. 614. (2) The court erred in compelling defendant to answer questions on his cross-examination concerning matters about which he was not interrogated in his examination in chief. *State v. West*, 95 Mo. 139; *State v. Turner*, 110 Mo. 196. (3) The court should have sustained the motion in arrest of judgment. Burning haystacks does not come within the statute defining arson in the fourth degree. R. S. 1889, sec. 3518. (4) The court committed reversible error in refusing defendant's instruction on the question of an alibi. *State v. Taylor*, 118 Mo. 153, and cases cited.

*R. F. Walker*, attorney general, and *Morton Jourdan*, assistant attorney general, for the state.

(1) The burning of haystacks is included in the definition of arson in the fourth degree as defined in section 3518, Revised Statutes, 1889. Black's Law Dict., 197; 2 Kent's Com. [13 Ed.], p. 342. (2) The court committed no error in admitting the letter in evidence, which the testimony clearly shows had been written by the defendant. Witness McNeil testified that he knew the defendant's handwriting, had seen him write, had received letters from him that the defendant had afterward admitted were written by him. He proved himself to be sufficiently acquainted with the handwriting of the defendant to render himself competent as a witness. He testified that in his

opinion the letter was written by the defendant. *State v. Minton*, 116 Mo. 605; *State v. Scott*, 45 Mo. 302. It is not necessary that a witness should swear to an actual belief in the genuineness of a writing. It is enough if he states his opinion as to such genuineness. *Watson v. Brewster*, 1 Pa. St. 381; *Clark v. Freeman*, 25 Pa. St. 133; *Fash v. Blake*, 38 Ill. 363. It is admissible for a witness to testify that the contested writing was like the handwriting of the party to whom it is charged. *Garrells v. Alexander*, 4 Esp. 37. (3) The defendant was not improperly cross-examined. *State v. Avery*, 113 Mo. 498. (4) The instructions properly define the law. The defendant was fairly and impartially tried and the judgment should be affirmed.

BURGESS, J.—At the April term, 1894, of the circuit court of Dent county defendant was indicted for arson in the fourth degree for setting fire to and burning three ricks or stacks of hay, the property of John W. Robinett of said county. On defendant's application a change of venue was awarded to Crawford county, where he was tried, and on conviction his punishment fixed at two years' imprisonment in the penitentiary. He appealed.

The evidence tending to show defendant's connection with the burning of the hay was circumstantial. It was shown that he claimed the care and custody of some children by the name of Curtis, one of whom, a girl by the name of Mary, had for some time been living at the home of Robinett. A short time before the burning, defendant wrote Robinett a letter, demanding the custody of the girl and notifying him that if he did not comply with his request she would cause his ruin. The letter concludes as follows: "Is your property insured against fire? What could a coward do with a

box of matches? Yours truly. Answer soon and save yourself trouble."

The evidence further showed that on the night of February 1, 1894, three stacks of hay, belonging to Robinett and situated on his farm, were burned; that during the evening of that day defendant was seen at a number of places on a road leading to the Robinett farm; that he inquired of several persons, who testified as witnesses, the distance to the farm of Robinett, and of one witness the exact location of the house, its color, and which he would reach first in passing along the road, the house or the barn. The last inquiry was made about dark, and just before the stacks were discovered to be on fire. Tracks were discovered coming to and from the hay, and were measured. After the arrest of the defendant, the sheriff took his shoes, made an impression in the dirt, which imprint was measured with the same rule and by the same person who had measured the tracks coming to and from the hay, and they were found to be exactly the same.

It was also shown by the proprietor of the newspaper at Salem that on the night of February 1 the defendant came to his office at about 11 or 12 o'clock and said to him that he had been over to Dutchtown to see some of his relatives, but found that they had retired, and so did not disturb them, but that seeing his light he had called to visit him. The letter referred to was identified as being in the handwriting of the defendant, and was introduced in evidence.

The testimony upon the part of the defendant tended to show an *alibi*. His father, mother and brother testified that he was at home at the time of the burning of the hay. His father testified that in his opinion the letter was not written by the defendant. The defendant denied burning the hay, denied writing the particular letter introduced in evidence, and when

asked if he had written Mr. Robinett any letters, said he had not written any threatening letters.

The first assignment of error is the action of the court in admitting in evidence over the objection of defendant the letter before mentioned.

It was shown by McNeil, a witness for the state, that he had seen defendant write his name, was acquainted with his handwriting, had received letters from him, and that the letter in question was in his handwriting. Under the rule announced by this court in the case of *State v. Minton*, 116 Mo. 605, and authorities cited, the witness showed himself clearly competent to testify to the handwriting of defendant. It was not necessary that he should have stated positively that the letter was in the handwriting of defendant; but it was sufficient to entitle it to go to the jury, that he gave it as his opinion that it was, after having stated that he was acquainted with his handwriting. *Watson v. Brewster*, 1 Pa. St. 381; *Clark v. Freeman*, 25 Pa. St. 133; *Fash v. Blake*, 38 Ill. 363; *Garrells v. Alexander*, 4 Esp. 37.

The letter having been shown to be in the handwriting of defendant and received through the mail by Robinett to whom it was written, there was no error committed in permitting the envelope and direction thereon to be read in evidence, although the address on the back of the envelope in which it was inclosed was not shown to be in defendant's handwriting. No one else had any interest in sending it to Robinett; it was evidently written for the purpose of being sent to him by mail or otherwise, and the circumstances are quite conclusive that defendant either addressed the letter to Robinett, or that it was done by his directions, or request.

In *State v. Yerger*, 86 Mo. 33, the defendant was indicted for forgery in the second degree, the act con-

sisting in forging a check for $50; a second count in the indictment charged him with uttering the forged check, and it was held that the possession of the forged instrument, or the uttering of it by one in the county where the indictment was found, was strong evidence tending to show that the forgery of the instrument was committed by him in the same county. So, by analogy, we think the letter to Robinett being in the handwriting of the defendant, and evidently intended by him for Robinett, which when received by him was inclosed in an envelope, was very strong evidence that defendant either addressed the letter himself or had it done.

There was no error committed in the cross-examination of defendant, which seems to have been confined to the rule announced in the more recent decisions of this court. *State v. Avery*, 113 Mo. 498; *State v. Kennade*, 121 Mo. 405. He denied burning the hay, his defense was an *alibi*, and it was entirely legitimate to ask him on cross-examination where he was at the time the hay was burned, as that was the direct issue involved in his defense. He could not escape cross-examination by simply denying the burning and stating that he was elsewhere at the time. When he stated that he was not present at the time and place of the fire, the state had the right to know where he was, and such cross-examination was entirely legitimate. It did not deprive him of any rights guaranteed to him by the statute, and was with respect to matters in regard to which he had testified on his direct examination.

On the question of *alibi* the court, over the objection of defendant, instructed the jury that if they believed from the evidence that the defendant was not present at the time and place when and where the haystacks of John Robinett were fired they would find him

not guilty, and refused the following instruction asked by him, to wit:

"The court instructs the jury that though an *alibi* may be a well-worn defense, yet it is a legal one to the benefit of which the defendant is entitled. It arises from the well known physical impossibility of one person occupying two places at one and the same time. That it devolves upon the state to show the presence of the defendant at the time and place of the alleged commission of the crime, and in this cause if you believe the defendant's evidence sufficient to raise a reasonable doubt, or if the state's evidence is so defective as to raise a reasonable doubt, or if, taking the whole evidence on the question of alibi, there is a reasonable doubt of the defendant's guilt, you should acquit."

This court has uniformly held that where the defense is an *alibi*, and there is evidence tending to support it, it is the duty of the trial court to instruct upon that theory of the case. The rule is universal that in a criminal prosecution the burden is upon the state to show the commission of the crime charged, and if there be a reasonable doubt of the guilt of the person accused and on trial he must stand acquitted. This unquestionably means that it devolves upon the state to show beyond a reasonable doubt that the person accused of the crime was present at the time of its commission, and not elsewhere, and that the court must so instruct. The burden rests upon the state throughout the entire trial; it never shifts.

The wisdom of the rule which, under such circumstances, required the court to go further and to instruct that if the jury entertain a reasonable doubt of defendant's presence at the time of the commission of the offense may well be questioned, as it would seem that the instructions on the part of the state fully covered any

such defense.  But it has been too long adhered to in this state, and by courts and writers of high authority, to be now departed from.

Under this view of the law the court clearly erred in instructing on that question, as by the instruction given the burden was cast on the defendant to establish his *alibi*, when it should have told the jury if they had a reasonable doubt of his presence at the time when, and place where, the hay was fired, they would acquit.  A similar instruction was disapproved in *State v. Taylor*, 118 Mo. 153.  For a similar reason there was error in refusing the instruction asked by defendant.

It is argued that burning haystacks is not included in the definition of arson in the fourth degree as found in section 3518, Revised Statutes, 1889.  That section reads as follows:

"Every person who shall willfully set fire to or burn any goods, wares, merchandise, or *other chattels* of another, not the subject of arson in the third degree, or any stack of grain of any kind belonging to another, or any grain, grass, or herbage growing or standing in the field, or any nursery or orchard of fruit trees, or any fence or hedge, belonging to another, or any bridge or causeway, not the subject of arson in the first degree, shall, on conviction, be adjudged guilty of arson in the fourth degree."

"Chattels includes all kinds of property except freehold, or things which are parcels of it." 3 Am. and Eng. Encyclopedia of Law, 163.  "Chattels *personal*, are * * * things *movable;* which may be annexed to, or attendant on, the person of the owner, and carried about with him from one part of the world to another. Such are animals, household stuff, money, jewels, corn, garments, and everything else that can properly be put in motion, and transferred from place to place." *Ibid.*, 167; 1 Black. Com. b. II, 387.

It thus seems clear that stacks of hay are chattels within the meaning of the statute, and that defendant's contention to the contrary is untenable. They are movable as other chattels at the will of the owner, and may be sold under execution, or replevied as chattels of like kind.

From these considerations it follows that the judgment must be reversed and the cause remanded for further trial, in conformity with this opinion. It is so ordered. GANTT, P. J., and SHERWOOD, J., concur.